■ In the Matter of ALEXANDER B. ADMINISTRATION FOR CHILDREN'S SERVICES, Respondent; VERONICA B., Appellant. STEVEN

Banks, Nonparty Appellant. (Proceeding No. 1.) In the Matter of Nacho B. Administration for Children's Services, Respondent; Veronica B., Appellant. Steven Banks, Nonparty Appellant. (Proceeding No. 2.) [814 NYS2d 651]—

In two related neglect proceedings pursuant to Family Court Act article 10, the mother and the Law Guardian separately appeal, as limited by their respective briefs, from so much of an order of the Family Court, Kings County (Hamill, J.), dated May 25, 2005, as, upon a fact-finding order of the same court also dated May 25, 2005, finding, after a hearing, that the mother was in violation of an order of supervision of the same court dated January 6, 2005, removed the subject children from the mother's custody and remanded them to the care and custody of the Administration for Children's Services of the City of New York. By decision and order on the motion of this Court dated June 21, 2005 the order appealed from was stayed.

Ordered that the order is reversed, on the facts and in the exercise of discretion, without costs or disbursements, the children are paroled to the care of their mother, and the matter is remitted to the Family Court, Kings County, for a further fact-finding hearing and a determination of what measures other than removal from the mother's care are necessary to ensure that the children's educational needs are met.

Alexander B., born April 18, 1989, and Nacho B., born October 7, 1993, are the sons of the appellant mother. Alexander has mild mental retardation, and Nacho is wheelchair-bound due to spinal muscular dystrophy. As a result of prior proceedings, the mother was directed to, among other things, ensure that the children attended school daily. Despite that directive, it was uncontroverted at the hearing that Nacho was absent from school on 106 days during the 2004-2005 school year, and Alexander was absent from school on 110 days.

Psychiatric and psychological examinations of the family indicated, however, that the mother was a loving, caring, and proactive parent, that the children were emotionally damaged by not being able to see and speak to her while in foster care,

and that continued removal would be extremely detrimental to their emotional and physical well-being. When Alexander had previously been placed in a nonkinship foster home, he refused to eat, bathe, or change his clothes, and was eventually returned to the Administration for Children's Services of the City of New York (hereinafter ACS) by the foster mother. Nacho indicated that he would act in the same manner if he were placed in nonkinship foster care. Additional reports submitted in connection with these proceedings noted that the removal of the children from the mother's home would be detrimental to their physical and emotional well-being, and recommended that the family should not be broken up absent a life-threatening risk to the children. The Family Court nevertheless removed the children from the mother's care, upon a finding that the mother was in violation of an order of supervision, dated January 6, 2005.

In determining a removal application pursuant to Family Court Act § 1027, the court must "engage in a balancing test of the imminent risk with the best interests of the child and, where appropriate, the reasonable efforts made to avoid removal or continuing removal" (*Nicholson v Scoppetta,* 3 NY3d 357, 380 [2004]). As part of that analysis, the court must "balance [the] risk against the harm removal might bring" (*id.* at 378). The inquiry is a "particularized" one (*id.* at 382).

In the unique circumstances presented here, although the mother violated the terms of the order of supervision by failing to ensure that the children attended school regularly, the balance of the record, including the children's detrimental actions when previously placed in foster care, demonstrated that the nature of the relationship between the mother and the children, coupled with the special needs of the children, are such that the harm posed by removal outweighs the detriment arising from the mother's failure to ensure that the children attended school daily. Upon remittitur, the Family Court should explore measures to ensure that the children's educational needs are met without removing them from the mother's care.

The mother's remaining contention has been rendered academic in light of our determination. Schmidt, J.P., Crane, Santucci and Spolzino, JJ., concur.