■ In the Matter of JULISSIA B. ADMINISTRATION FOR CHILDREN'S SERVICES, Appellant; NAVASIA J., Respondent, et al., Respondent. [7 NYS3d 596]—

Appeal from an order of the Family Court, Kings County (Alan Beckoff, J.), dated May 8, 2014. The order, insofar as appealed from, after a hearing, granted the mother's application pursuant to Family Court Act § 1028 for the return of the subject child to her custody.

Ordered that the order is reversed insofar as appealed from, on the law and the facts, without costs or disbursements, and the mother's application pursuant to Family Court Act § 1028 for the return of the subject child to her custody is denied.

The subject child, an infant, was removed from the mother's custody just after her birth, in April 2014. The mother has four older children, who were removed from her custody a year before the subject child was born. The older children remain in foster care, pursuant to the Family Court's denial, after a hearing on May 6, 2013, of the mother's application for their return. The petitioner commenced this proceeding based on allegations that the subject child's physical, mental, or emotional condition was in imminent danger of becoming impaired as a result of the failure by the mother and the child's father to exercise a minimum degree of care. The mother made an application for the return of the subject child pursuant to Family Court Act § 1028 (a). After a hearing, the Family Court granted the application. The petitioner appeals.

By decision and order on motion dated May 29, 2014, this Court granted the petitioner's motion to stay enforcement, pending the determination of this appeal, of so much of the Family Court's order as granted the mother's application and directed the return of the subject child to the mother.

An application pursuant to Family Court Act § 1028 (a) for the return of a child who has been temporarily removed "shall" be granted unless the court finds that "the return presents an imminent risk to the child's life or health" (Family Ct Act § 1028 [a]). In a proceeding for removal of a child, the Family Court "must weigh, in the factual setting before it, whether the imminent risk to the child can be mitigated by reasonable efforts to avoid removal" (*Nicholson v Scoppetta*, 3 NY3d 357, 378 [2004]). Ultimately, the Family Court "must balance that risk against the harm removal might bring, and it must determine factually which course is in the child's best interests" (*id.* at 378). In reviewing a Family Court's determination of an application pursuant to Family Court Act § 1028 (a) for the return of a child who has been temporarily removed, this Court must determine whether a sound and substantial basis in the record supports the Family Court's determination (*see Matter of Alex A.E. [Adel E.]*, 103 AD3d 721, 722 [2013]; *Matter of Alan C. [Thomas C.]*, 85 AD3d 912, 914 [2011]).

Upon reviewing the record, we find that it does not provide a sound and substantial basis for the Family Court's determination granting the mother's application (*cf. Matter of Alexi R.C. [Monica D.]*, 109 AD3d 819, 821 [2013]; *Matter of Cyraia B. [Carduck B.]*, 96 AD3d 936, 937 [2012]; *Matter of Alan C. [Thomas C.]*, 85 AD3d at 914; *Matter of Jesse J.*, 64 AD3d 598, 599-600 [2009]). In particular, the evidence established, among other things, that the mother had failed to address or acknowledge the circumstances that led to the removal of the child (*see* Family Ct Act § 1028; *Nicholson v Scoppetta*, 3 NY3d at 369). Although, as our dissenting colleague points out, the mother complied with the petitioner's service requirements, she was still prone to unpredictable emotional outbursts, even during visits with the children, and she was easily provoked and agitated. Indeed, the case planner testified that she had not seen any improvement in the mother's conduct even after the mother participated in the mandated services. Finally, the case planner testified that the agency could provide "homemaking" services, but those services would not be preventative and, in any event, would only be for several hours a day. In sum, until the mother is able to successfully address and acknowledge the circumstances that led to the removal of the other children, we

cannot agree that the return of the subject child to the mother's custody, even with the safeguards imposed by the Family Court, would not present an imminent risk to the subject child's life or health (*see Matter of Alexi R.C. [Monica D.],* 109 AD3d at 821; *Matter of Kimberly H.,* 242 AD2d 35, 39 [1998]; *cf. Matter of Tsulyn A. [Deborah A.],* 90 AD3d 748, 749 [2011]; *Matter of Noah Jeremiah J. [Kimberly J.],* 81 AD3d 37, 43-44 [2010]; *Matter of Alexander B.,* 28 AD3d 547, 549 [2006]).

In light of our determination, we need not address the petitioner's remaining contention. Rivera, J.P., Balkin and Sgroi, JJ., concur.

Hall, J., dissents, and votes to affirm the order insofar as appealed from, with the following memorandum: In my view, the Family Court's determination granting the mother's application pursuant to Family Court Act § 1028 for the return of the subject child is supported by a sound and substantial basis in the record. Accordingly, I respectfully dissent and vote to affirm the Family Court's order insofar as appealed from.

On this record, it appears that the mother did everything in her power to comply with the petitioner's service requirements. Indeed, the evidence presented at the hearing demonstrated that the mother complied with virtually all of the petitioner's service requirements. Specifically, the mother completed a parenting skills program, an anger management program, and a mental health evaluation. The mother was also fully compliant with her drug treatment program, and all her drug tests were negative. Furthermore, the comprehensive risk assessment of the mother, which was conducted during the pendency of the proceeding, did not indicate that returning the subject child to the mother would pose an imminent risk of harm to the child.

The petitioner's concerns about returning the subject child to the mother were largely based on the mother's proclivity to have emotional outbursts. However, the testimony presented by the petitioner revealed that the mother would get upset when the children were produced late for scheduled visits, or were not dressed in a way that the mother deemed appropriate. The Family Court, who had the advantage of seeing and hearing the witnesses, found that the mother's reactions, while perhaps "not the best way to handle things," were rational and understandable in light of the circumstances. The Family Court reasoned that, although the mother was complying with the petitioner's directives, the "goal post" kept getting moved and any reasonable parent would be frustrated under those circumstances.

In addition, the Family Court's involvement in the proceedings that resulted in the removal of the older children supported its additional finding that the subject child was differently situated from the other children, and that the mother could handle caring for the subject child, a newborn infant, under appropriate supervision. It is eminently reasonable to conclude that the mother could adequately care for one infant child, but not five children in total.

The Family Court's order also imposed appropriate safeguards and conditions for the return of the subject child to the mother. The mother was required to comply with supervision by the Administration for Children's Services (including announced and unannounced visits) and to comply with referrals for domestic violence counseling and supportive psychotherapy (including the possible need for medication). The mother was also directed to comply with homemaking services if put in place, and to enforce a Criminal Court order of protection in her favor. These conditions and safeguards minimized any potential risk to the subject child (see Nicholson v Scoppetta, 3 NY3d 357, 378 [2004]).

On balance, it is my opinion that the Family Court's finding, that the risk of harm in removing the subject child outweighed the risk of nonremoval, has a sound and substantial basis in the record. Accordingly, I vote to affirm, insofar as appealed from, the Family Court's order, which returned the subject child to the mother with the above-mentioned conditions and safeguards (see Family Ct Act § 1028 [a]; Nicholson v Scoppetta, 3 NY3d at 378; cf. Matter of Cyraia B. [Carduck B.], 96 AD3d 936 [2012]; Matter of Alan C. [Thomas C.], 85 AD3d 912 [2011]).